Your Honor, the first case of the morning to call is 209-706, keeping the State of Illinois Judge Clifton Powers. On behalf of the FRA, Mr. Bruce Kirkham. On behalf of the FRA, Mr. Edward Seneca. Are you ready to proceed? You may proceed with your argument as you wish. May it please the court and counsel. Good morning, Your Honors. My name is Bruce Kirkham and I appear before you today on behalf of the defendant, the felon, Mr. Clifford Powers. Illinois law has long settled that a criminal defendant charged with first-degree murder is entitled to have his jury instructed on the lesser-included offense of involuntary manslaughter where there is some evidence, even very slight evidence, that the victim's death was the result of the defendant's reckless conduct. In this case, the evidence of the defendant's reckless conduct was more than very slight. There was substantial evidence in this case that the victim, Mr. Sawyer, died as a result of Mr. Powers' reckless conduct. Two witnesses who spoke with Mr. Powers shortly after the shooting, Stephen Villareal and Michelle Gerstung, testified that Mr. Powers said the shooting occurred as he and Mr. Sawyer struggled over a weapon. And this account of the shooting is consistent with a line of Illinois cases that holds that where a defendant points a firearm at someone, a struggle ensues over that firearm, and the other person is shot during that struggle, that defendant may be convicted of a lesser-included offense based on recklessness rather than intentional conduct. Is there evidence that the struggle, as a result of the struggle, the shot that what appears to be the fatal shot occurred? It seems that the evidence is not really clear on that. Let me preface that by saying not being clear makes it a jury question. Is your question that the physical evidence or the testimonial evidence conclusively refutes the theory that the shot occurred during the struggle? And my answer to that would be no, it does not. The trial court ruled that the absence of stippling or powder burns around the wounds conclusively showed that it was not during the struggle. But the doctor who performed the autopsy, Dr. Choi, said that there are a variety of factors that would determine whether or not there's going to be powder burns. When given the opportunity to testify that you absolutely would see powder burns in a close-range firing, he didn't say that. He said there's factors that determine that. Is there more thinking of the order of the shots? I don't know that the record is clear about the order of the shots. That's my question to you. When the record's not clear, I think it opens up argument for the defendant that this occurred during a struggle. Well, does it seem reasonable to conclude that the lethal or fatal shot to the back of the head was the first shot? And that the dead person then continued to struggle in his death throes, and then the second and the third shot occurred? And the second shot might have been the telephone, and then the third shot was the hip? I think I can only answer that by saying that given the evidence that we have in this case, it doesn't conclusively establish an order of shots. Well, the evidence doesn't conclusively establish that there was a struggle. That's part of the problem that I'm having with your argument. If I thought there was a struggle, then I might buy your argument a lot better than buying the argument that there's some evidence of voluntary manslaughter. I think there's a very strong piece of evidence from which you can infer a struggle, and that is that the defendant told Mr. Villareal that during the struggle he shot himself in the hand, which would indicate some kind of struggle or manipulation or something beyond just misuse of a firearm by a single person. That evidence is corroborated by Michelle Verstang. They said the defendant came home showered, dressed a wound on his hand, had a bleeding wound. They found the defendant's DNA and blood in the car that they were driving that night. I think that's a very powerful piece of evidence that indicates there's a struggle involved here. Was there an attempt to have a self-defense instruction submitted as well? Yes, there was. And what was the basis of that argument? To be honest, Your Honor, I don't recall the defense's proffer on the arguments in favor of that. I know that it was offered. I don't know what his theory of self-defense was. I'd be happy to look at the record. Was it the factual scenario that your client was going to rip off a drug dealer? Two witnesses testified that he made those statements prior to the incident, yes. And while attempting to rip off a drug dealer who apparently, from what I recall, did not have a weapon, that your client then claimed self-defense because the victim of the robbery may have turned the tables on him and taken the gun away from him, and that's his theory of self-defense. That may have been the explanation and the rationale and the argument behind the defendant's request that the jury be instructed as to second degree, which is a self-defense. But he also requested involuntary manslaughter, which is consistent with the facts that we do have. If the defendant had the gun and the victim reached out and grabbed the gun, and during the tussle over the gun, the gun discharged, striking the victim and causing his death, that can be involuntary manslaughter, and that's the issue that I raised in this case rather than the denial of the self-defense instructions that we're arguing here today, that there was some evidence that supports the defense theory of reckless conduct in pointing the gun at the individual who was shot. You know, you ask about impotence of a struggle. I would like to note, too, that during the autopsy, gunshot residue tests were performed on the victim's hands, but those samples or the actual material, the test material, was never sent to a lab for further testing. As I recall, this defendant was not charged with felony murder. Is that correct? That is correct. He was charged with three counts of first degree murder under A1 and two counts under A2 in alternative forms of charging A2. Well, if he had been charged with felony murder, would it have changed anything as far as if he had been found guilty of felony murder, then this argument about involuntary manslaughter was going by the boards? I believe so, but that's not what happened. Yeah, it's called a counterfactual conditional, but in any event, I just wanted to clarify that in my mind, see if you agree with my understanding. Yeah, he was not charged with felony murder here. I don't know why the state didn't do that. That's their call and they chose not to go that route, and when they charge intentional homicide and there's some evidence introduced at trial that supports the lesser-included instructions, the court is bound to give those. The court is not permitted, the trial court is not permitted, to weigh the evidence or to assess the credibility of the witnesses or assign a qualitative value to the evidence that supports the lesser-included instruction. Is there some threshold? Very slight evidence. In fact, the Supreme Court has said that the defendant has a right to have the jury instructed on his theory of the case even when the evidence concerning the theory is very slight, inconsistent, or of doubtful credibility. There should not be a credibility assessment involved here. Once there is evidence that is identified that supports the involuntary manslaughter instructions, it then becomes a matter for the finder of fact, in this case the jury, to make those credibility calls and to determine who to believe. The state obviously would stand up in the closing argument and say this was an intentional killing, but the defendant has a right to also stand before the jury and say this was not an intentional killing, this resulted from his reckless conduct. The parties can argue the inferences to be made from the evidence that was presented at trial, and it's their call. They may have convicted a first-degree murderer, but the defendant has a right to ask them to find him guilty of the lesser-included offense of involuntary manslaughter here without the judge intervening and saying no for the reasons that he did here. Number one, that the physical evidence refutes it. How does this standard that you've recited more than once differ from the ability or the authority of the trial judge to render a directed verdict? A directed verdict is a motion by the defendant asking that the evidence in the light most favorable to the state is insufficient to continue to the jury. Well, the trial judge is taking away the prerogative of the prior fact if it's a jury trial and directing the jury to render a verdict accordingly, and I'm just wondering if the level or the quantum of evidence is similar, identical, or different. Well, I know that one major difference here, one significant difference, is that in a motion for a directed verdict, the judge is to take the evidence in the light most favorable to the state. Here, it seems to be reversed. You have to take the evidence in the light most favorable to the defendant. Very slight evidence of even dubious credibility is sufficient here, according to the Illinois Supreme Court. And when you take that, when you examine it from the defendant's perspective and his right to offer and have the jury decide whether it was reckless conduct or intentional conduct, the judge... So apparently what you're telling me, or this panel is, is that a directed verdict in a criminal case is different than a directed verdict in a civil case. The standards are different. Because you've suggested, I believe, that in a criminal case, the state never gets... Well, no, the defendant supposedly doesn't get the benefit of the doubt in a directed verdict, but in a civil case, the proponent of the movement gets the right, or I should say the proponent does not get the advantage. It's the opponent that gets the advantage of the motion for a directed verdict, which can change. And I'll make a motion. You know, I have to be honest with you, Your Honor. I haven't done a civil case. And the last time I looked at those rules was when I took the bar exam 20 years ago. You know, I do these criminal cases. And, you know, the standard in this case, whether or not there's sufficient evidence to give a lesser-included offense, is there very slight evidence? Counsel, can I ask you, is it your position that there is very slight evidence as to the entire transaction or that there must be some evidence, some very slight evidence, pardon me, as to all three shots? How do you apply that? I've wanted to address that. I think that one of the bases that the trial court cited here was some kind of indication to believe that the testimony was possibly the first shot was during the struggle, but possibly the other two shots were not during the struggle. But I don't think that's a proper inference. I think there's an equally strong inference to be made that these witnesses testified in common usages of speech. There was a struggle over the gun and I shot him three times. You know, that can go both ways. You know, I think that that certainly leads to an inference that all three shots were fired during the struggle. And because that's a reasonable inference to be drawn from the language here, that makes it a jury question. The jury may conclude alternatively, but at least the defendant should be given the opportunity to make that argument to his jury that's deciding his fate. I was asking you not so much the factual but as a matter of law. Is it that very slight evidence applies to the act that you claim is reckless, the struggle, or is it a separate issue if the trier of fact was to draw a different inference, that there were two shots over which there was a struggle? Their perpetrator backs up, fires the final and fatal shot independent of the struggle. I think if that was exactly what the testimony was, then I would have big problems here today. So your position is it's fact determinative. The law does not distinguish between a struggle that ends or a continuum. That was probably not a very well-worded question, but you get my gist. Yeah. You know, if the trial evidence clearly showed that there were an accidental shooting followed by two intentional shootings, I mean, there was intentional shootings there, and you can't get around that fact, I think. But that's not what the evidence was here. So your position is that the facts are just not clear enough for a trial court to have determined that that was what happened and, therefore, the instruction should not have been given. Is that the gist of it? Yes. I think that the evidence can be reasonably interpreted, and a rational jury could infer that all three shots were fired during the struggle, which would make it all reckless. You agree that that inference can be conclusively repeated by the physical evidence, and if it is, then it's not entitled to the instruction, correct? Yeah. I think if the physical evidence was conclusive, then it's not. And the trial court looked at really only addressed in its oral ruling the stifling or gunpowder residue, but we also have the fact that there are three wounds, three shots, I should say. And, you know, we have this wound to the head that clearly is the fatal wound. Is it reasonable to infer that that shot was, or strike that, that that happened early in the struggle and then the person kept struggling, or that that happened later in the struggle? I think that's a reasonable inference. Given the evidence that we have that does not give the sequence of the shots, it's certainly reasonable to infer that the head shot was the first shot. Any other questions? Thank you, counsel. You'll have a chance to reply. Thank you. Counsel? May it please the court? Counsel? My name is Edward Posenek. I'll be arguing on behalf of the people in this matter. I'd like to pick up on a couple of things you spoke about with opposing counsel during his part of the argument. Number one, something that you mentioned, Justice Dorganson, whether or not regarding the struggle, if the lesser included offense instruction would apply if there was a struggle and then something else, or if it would apply to all three shots being fired during the struggle. And the people's position is that, no, you don't get a lesser included offense instruction if there's evidence to show that if a struggle happened, it ended and then subsequent shots were fired. And I believe the evidence here supports that inference. I had an opportunity to look at that. Do you think the gunpowder residue issue brought up by the trial court is enough to keep this instruction out? Standing alone? Yes. Just the gunpowder residue? Yes. And there was some testimony that that was 12 inches and some that it was 20 inches. I mean, it kind of goes back and forth. If, in fact, the shooting took place where the defendant was outside the car on the passenger side and the victim was seated in the driver's seat and two people are struggling at arm's length, couldn't that give you over 20 inches, certainly over 12 inches? I'm not comfortable saying that. That evidence wasn't brought up, you know, the length of the seat and arms. There was no detailed evidence whatsoever of a struggle. The evidence was just that the defendant tried to grab the gun. There was no evidence that there was, you know, a major struggle over the weapon. Is there some reason why the state didn't add a count for felony murder? I'm unaware of that, Your Honor. I didn't speak to the assistant who tried this, so I can't speak to that issue specifically. Were the witnesses that supposedly testified to the evidence that raised the issue of whether or not there was a struggle also the same witnesses that testified that this was going to be a robbery? The witnesses testified that the victim tried to grab the gun. They also testified that this was going to be a robbery, yes. Yes. So if you believe them for one purpose, do you believe them for another or not? Or at least should that be left to the jury? You know, I'm not sure what analysis went into deciding what to charge this defendant with. I'm not sure why they didn't charge him with felony murder. Looking at it from, you know, from just the cold record as I have, I definitely would have charged him with felony murder. I don't see the drawback to that. But I wasn't in that position. And I can't say that it was disbelieving part of the witness's testimony and believing other parts. That doesn't make sense to me at all. You mentioned a couple times that the victim tried to grab the gun. I thought the testimony from these two witnesses was that the defendant told them shortly after this happened that the guy grabbed the gun. Not that he tried to grab the gun, but that he actually grabbed the gun. Am I mistaken in here? No, Your Honor. I'll recount the specific testimony of Gerstmann, which is the testimony that I alluded to in my brief. And I believe this delineates the sequence of the shots. I know there was some time spent with opposing counsel on that. And I believe the sequence of the shots is delineated here. I guess the guy grabbed it and the guy pulled the trigger because they were fighting over it. So when the victim allegedly grabbed at the gun, he pulled the trigger. Okay, and defendant told you that the other guy grabbed the gun and tried to take it away from him. Yeah. What did he say happened after that? That he shot him. Did he say he shot him in the cell phone? Yeah. So first shot, when he tried to grab the gun, the victim allegedly pulled the trigger. And second shot, defendant fired himself into the victim's cell phone. And after that, what did he say about the cell phone? Anything more? He shot him in the back area too. The victim had two wounds. One through the very top of his skull down into almost the base of his spine. And he had one that entered the front of his hip and exited out the back. So the people submit that the inference from Gersten's testimony is the first time the gun was fired was a shot to the hip. The second was clearly the cell phone because Gersten specifically said that. In the third area, she said in the back area, that can only be the fatal shot, the shot that killed him, the shot that entered the top of his skull and lodged in the base of his spine. Now, I had an opportunity to look at the record very quickly prior to oral argument while defense counsel was looking at it. And part of Gersten's testimony also was that the defendant walked around to the driver's side of the vehicle. And that's where the struggle ensued over the weapon. And two shots were fired at that point. And this is at the record at page 1144 and 45. She was then asked if the defendant shot the victim a third time. And after an objection that was sustained, the question was reformulated. And Gersten said yes, there was a third shot. Now, if you look at the pictures of the victim's body, he was found with his pants hooked around the gear shift in the center console. And his head on the pavement outside the open passenger door. There's no way all three shots could have been fired from the driver's side of the window for the victim to end up like that. If the last shot, the fatal shot, entered the top of his head and lodged in his spine, he's not going to be able to lunge over the gear shift to try to get out of the passenger side of the vehicle. The only inference that can be raised from that evidence is that the third shot was a fatal shot and was fired to the defendant on the passenger side of the vehicle after the defendant walked around from the driver's side. That's the only inference that could arise from that. You're suggesting that the first two shots were on the driver's side and then the third shot was a coup de grace, essentially, on the passenger side? Well, Gersten suggested that the first two shots were on the driver's side. She testified to that. And she also testified the defendant shot him a third time, but she didn't say where that third shot occurred from. And the way the evidence was presented, including the photographic evidence of the victim's body, that's the only thing that could have happened. That third shot was fired through the passenger side window. And that shell casing was – there were three shell casings found. One of the shell casings was inside the bed of the truck on the passenger's – parked on the passenger side of the car. So the casing actually – if all three shots were fired on the driver's side, it would have gone over the car and landed into the bed of the truck. That couldn't have happened. Where were the other two shots fired? The other two shell casings were found outside, I believe, the passenger's door. I don't know. Doesn't that disprove – tend to disprove that any shots were fired from the driver's side at all? That's what Gersten testified to. And shell casings can roll on pavement. I just don't see how they could leap over cars and into the back of a truck. I mean, perhaps the pavement was a bit sloped and they rolled, you know, via gravity to where they rested. And presumably they rested against the defendant's body, who was – the victim's body, who was lying outside the passenger's door as well. Villareal didn't testify that the defendant said that this took place at any particular side of the car, did he? No, he didn't. But he did testify that the defendant shot the victim either in the stomach or head. And this testimony came after he testified that the defendant told him that the victim tried to grab the gun. So I haven't found any cases where there are multiple gunshot wounds and the defendant got an involuntary manslaughter instruction. I haven't found any. I don't know if the defense counsel has, but the law is clear that if that evidence, including whether a weapon was used, and if there were multiple wounds inflicted on the victim, you don't get the involuntary manslaughter instruction. Well, couldn't it just be an indication that he was even more reckless than warm? I'm not sure what you mean there, Your Honor. This was the paradigm of recklessness? That he was just shooting willy-nilly everywhere? I understand where you're coming from, but the point is that I think if you've ever watched some dark comedies in theater, it's quite possible that the more stupid and incompetent an individual is, the more probable it is that he'll shoot you more than once. Recklessly. Well, if the defendant, who armed himself with a loaded weapon to try to rob a drug dealer, shot the drug dealer, if he pulled the trigger himself, that's murder. I did hear about the deceased robber who, when he pulled the gun's trigger and it didn't fire when he had the gun pointed at his victim's head, he then turned the gun, looked down the barrel, and fired the gun again, testing to see whether it worked, and it did. Now, that's, to me, the paradigm of recklessness. Maybe stupidity as well. But my point is that just because there may be cases out there that suggest that one injury alone is typical, but that doesn't necessarily prove that it's the worst or the best scenario. Sure, sure. I suppose there could be a case where three shots are fired during the struggle over the weapon. Six shots until the gun's empty. But the evidence here doesn't support that. Exactly. The point is that if you watch some movies, the James Bond attempts to empty the magazine or empty the gun so that it can't be, if, in fact, the assassin breaks away, he then doesn't have a gun that's loaded and he can fire at the person. Sure. And if you watch Steven Seagal, he hits the release lever and the gun falls apart. Right. So, you know. Sure, I understand what you're saying. When we talk about multiple gunshots, I mean, aren't we really talking about the fatal gun? I mean, here we have three gunshots. One hits a cell phone, so that's nothing. I mean, but the other two certainly caused injury. One was fatal. One was clearly not, according to the pathologist. Yeah. So we have the one fatal gunshot. If that was fired during the struggle, then doesn't he get the instruction? If there's some evidence, slight evidence, that that one gunshot was fired during the struggle, he doesn't get the gun? No, because he intentionally shot the defendant. A second time. Yes. There was opposing counsel reference that there need only be slight evidence to get the instruction. The case is fairly clear to say that it's not just slight evidence. It has to be credible evidence, and I'm referring to DeVincenzo. There must be some credible evidence in the record that would reduce the crime from first-degree murder to involuntary manslaughter. That's at page 249 of 183 Hill 2nd. And, again, in Pupil v. Colton, which is 219 Hill 2nd, at page 360, the evidence deduced at trial must rationally support a conviction on the less-included offense and an acquittal on the greater offense. So there is some baseline determination being rendered by the trial court under this case law. Obviously, he can't say, I believe this testimony and I don't believe that testimony, but there is some baseline credibility determination. Your Honor, Justice McClaren, you refer to it in terms of directed verdict analysis, and I would refer to it just as a base-level admissibility determination. The court is entitled to exclude evidence that's not credible, and that's the same kind of thing that's at play here when the trial court is deciding whether or not to issue an instruction. Counsel, how does that – or how do we reconcile that with counsel's quote from the Supreme Court that it's very slight evidence, even if inconsistent or of doubtful credibility? I mean, how do we impose a higher standard than the Supreme Court? Well, the two cases I cited are Supreme Court cases, and they –  DiVincenzo and Colton. They're both Supreme Court cases, and they post-date – I believe they post-date the case that the defendant cited. But the way it came out in Colton, it would be illogical for the jury to base a jury – for the jury to base a – pardon me. The jury can't base a verdict on irrational evidence. The evidence must rationally support the jury's verdict. So if the evidence doesn't rationally support the jury's verdict, it can't be relied upon by the jury. And it's the exact same analysis in determining whether that credible evidence supports the instruction. If the jury couldn't base an involuntary manslaughter conviction on the fact that Gersten testified that the victim grabbed for the gun and Villareal grabbed for the gun, if the jury couldn't base an involuntary manslaughter conviction on that, then you don't get the instruction. And especially in this case where the physical evidence, Dr. Choi's testimony, conclusively precludes the instruction. Opposing counsel tried to characterize Choi's testimony as equivocal. He said he would not expect to see gunpowder residue fire from 20 inches. I mean, it was as clear as could be. He did use the words, like, usually, and we don't normally see that and couch it in those terms. He did, and he did say variables could affect it, but there was no indication that any variables were present here that would have affected it. Defense counsel could have explored that on cross-examination but didn't. There was no indication from Choi that these were something other than distant wounds, distance wounds. People would ask that this court affirm the defendant's conviction. Thank you very much. Do you wish to reply? Just briefly, Your Honors. I think that Michelle Gerstern also testified that the defendant, Gerstern testified she told police that the defendant told her he got into the passenger seat of the victim's car, acted like he was going to pay, and pointed a gun at the victim. The other man grabbed the gun and pulled the trigger when they were fighting over the gun. The defendant told Gerstern the other guy tried to take the gun away from him. That would indicate that the struggle took place on the passenger side of the vehicle. That's consistent with where the spent shell casings were found on the passenger side. It makes sense that this occurred in the vehicle that the victim was driving that night, so logically we could affirm that he would have been behind the wheel in the driver's seat. The passenger, the defendant would have got in the passenger seat. The struggle occurred over the counsel, backing out of the door, shots go off. The victim ends up laying across the seats with his head out the passenger door. That's a perfectly logical scenario, I think, and much more likely than shooting from both sides of the vehicle, being on one side, on the driver's side, shooting another shot from the passenger side. Is the opposing counsel correct in his observation that there are no reported cases where someone has shot a victim more than once, where a voluntary manslaughter instruction was given? I am not aware of any cases. I don't want to say that they're not out there. I haven't seen any, but let me make this point, too, that I wanted to make in the rebuttal. There was testimony from the police crime lab's firearms examiner that this was a semi-automatic weapon. Okay, so if you got your finger on the trigger and there's a struggle, that gun is going to reload and be ready to fire just almost instantaneously after the previous shot is fired. It's not unreasonable to infer that these three shots happened very quickly, boom, boom, boom. It could happen that fast. This is not a revolver or a double action where you've got to pull the trigger three times. How do you account for the difference in the location of the shots, the left hip and then the top of the head, if it's happening that quickly? That has a fair amount of movement of the gun. Okay. Victim's in the driver's seat. Defendant's in the passenger's seat. The struggle's here, and as he's coming away, the shot's down low, hit his cell phone in the hip, and then in the top of the head. It makes sense if he's doing that. Wouldn't that mean that your client then had full control of the gun? No, the victim can still have his hands on that gun also during all three shots. I think that it's possible they could be fighting. Dr. Choi testified, I believe, that the victim could have been in a horizontal position when the shot was fired horizontally, which doesn't preclude a struggle. Was there any discussion as to whether or not more than one finger could fit inside the trigger guard? I don't recall that at all. But if there are four hands fighting over the gun, one finger on the trigger, no matter whose it is, it could be unintentional squeezing of that trigger, even if it's the defendant here. And I'd point out again that there's evidence of a struggle over the gun because the defendant had a wound to his left hand, a bleeding wound. He came back to the car in pain and bleeding, which would indicate something happened, and he told Mr. Valario that he shot himself in the hand. Well, was it that he shot himself in the hand or that the slide injured him when the slide went back? Because you can injure, you can nick your hand or injure your hand when the slide comes back because it comes back pretty fast. It does. And if it has any sharp edges, you can now have a gash. Absolutely. And he told Mr. Valario that he shot himself in the hand, which is the most evidence that the record has. It doesn't indicate a slide. I would note that when he was booked into the jail 10 days after this occurred, they took photographs of the injury to his hand, but those photographs were not developed, so there's no evidence. So we know that there were three shots because there were three empty shell casings, but we don't know whether or not there were more where the shell casing was not found. Because the gun was never found, correct? That's correct. We don't know whether the clip was emptied and the shell casings were found or whether there were just three shots based upon shell casings. That's correct. I don't know. I would just note that the Lake County Major Crimes Task Force did this crime scene extremely thoroughly. If there were more shell casings around, it's probably where they found them. So they found three, two on the ground near the passenger side and one in the back of a truck that was parked next to the passenger side of the victim's vehicle. So if there are no further questions, Mr. Pollard, I respectfully ask that this court reverse this conviction and rename this case to Lake County for a new trial on this matter. Thank you, Your Worship. Thank you very much. You may be in recess.